UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____-CIV-_____/_____

JENNIFER POMERANC, an individual,

     Plaintiff,

vs.

ASSOCIATION SPECIALTY GROUP LLC, a Florida
Limited Liability Company, and REALMANAGE, LLC,
a Delaware Limited Liability Company,

     Defendants.

_____/

## COMPLAINT

1.     Plaintiff, JENNIFER POMERANC (hereinafter referred to as "Plaintiff" and "POMERANC"), was an employee of Defendants, ASSOCIATION SPECIALTY GROUP LLC, a Florida Limited Liability Company, and REALMANAGE, LLC, a Delaware Limited Liability Company (hereinafter collectively referred to "Defendants"), and brings this action against Defendants for alleged interference and retaliation violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601 *et seq.*

2.     At all times material to this action, POMERANC has been an individual residing in Miami-Dade County, Florida, within the jurisdiction of this Court.

3.     At all times material to this action, Defendants, ASSOCIATION SPECIALTY GROUP LLC and REALMANAGE LLC, have owned and operated a full-service property management business, including but not necessarily limited to providing services for homeowners' associations, condominiums, and developers in Florida, with Defendants'

1

operating multiple offices including at 9050 Pines Boulevard, Suite 480, Pembroke Pines, Florida 33024 in Broward County, within the jurisdiction of this Court.

4.    At all times material to this Complaint, Defendants, ASSOCIATION SPECIALTY GROUP LLC and REALMANAGE, LLC, directly or indirectly, acted in the interest of an employer toward Plaintiff, including without limitation directly or indirectly controlling the terms of employment and compensation of Plaintiff. Alternately, Defendants, ASSOCIATION SPECIALTY GROUP LLC and REALMANAGE, LLC, and each of their respective divisions, subsidiaries or affiliates, and parent entities, however constituted, were joint employers of Plaintiff because each, respective division, subsidiary or affiliate acted directly or indirectly in the interest of the other in relation to Plaintiff and the others similarly situated to him. As a second alternative, Defendants, ASSOCIATION SPECIALTY GROUP LLC and REALMANAGE, LLC, and each of their divisions, subsidiaries or affiliates, and parent entities, however constituted, were joint employers of Plaintiff because they commonly controlled the terms of compensation and employment of Plaintiff. As a final alternative, Defendants, ASSOCIATION SPECIALTY GROUP LLC and REALMANAGE, LLC, and each of their divisions, subsidiaries or affiliates, and parent entities, however constituted, directly or indirectly acted in the interest of an employer toward Plaintiff all material times to this Complaint, including without limitation directly or indirectly controlling the terms of employment and compensation of Plaintiff.

5.    Jurisdiction is conferred on this Court by 28 U.S.C. §1337 and 29 U.S.C. §2601.

6.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this action occurred in Broward County, within the jurisdiction of the United States District Court for the Southern District of Florida, Fort Lauderdale Division.

7.    In approximately June 2015, ASSOCIATION SPECIALTY GROUP LLC hired POMERANC as HR Director.

8.    Between approximately June 2015 and December 2019, POMERANC satisfactorily performed her duties for ASSOCIATION SPECIALTY GROUP LLC and REALMANAGE, LLC, during which time Plaintiff's position/job title changed several times culminating with the Plaintiff serving as Defendants' Director of Talent and Resource Management.

9.    In approximately late October 2019, POMERANC began exercising her right to seek intermittent leave from her employment with ASSOCIATION SPECIALTY GROUP LLC under the FMLA, 29 U.S.C. §2612(a)(1)(C), in order to care for Plaintiff's elderly father who had one or more serious health conditions including but not necessarily limited to: (i) dementia; and (ii) diabetes.

10.    Effective on or around November 1, 2019, REALMANAGE, LLC acquired ASSOCIATION SPECIALTY GROUP LLC, since which time Defendants have held out to the public that "Association Specialty Group" is doing business as "a Division of REALMANAGE, LLC." *See* Exhibit A.

11.    On or around November 1, 2019, executives of REALMANAGE LLC including but not necessarily limited to: (i) Jonathan Louis, Chief Executive Officer; (ii) Christopher Ayoub, President; (iii) Erik Levin, Director/Chief Operating Officer; (iv) Amber Jackson, Senior Vice President of Post-Merger Integration; and (v) Tracy Guzman, Vice-President of Business Retention & Development, orchestrated and attended an introductory lunch meeting held at Defendants' offices in Pembroke Pines, Florida, during which meeting: (a) existing employees of ASSOCIATION SPECIALTY GROUP LLC were informed about the acquisition by

REALMANAGE, LLC; (b) POMERANC and other employees were told that all systems, software, and personnel would remain the same; and (c) an open forum with a questions and answers session occurred.

12.    In in the late afternoon of November 1, 2019, POMERANC met with REALMANAGE, LLC's Senior Vice President of Post-Merger Integration, Amber Jackson, and was informed by Ms. Jackson that no change would occur in POMERANC's position and employment continuing with Defendants, at which time Plaintiff's base salary was $67,000.00 per year plus benefits.

13.    Between approximately November 1, 2019 and December 31, 2019, REALMANAGE LLC paid and funded the payroll of all employees of ASSOCIATION SPECIALTY GROUP LLC, including but not limited to POMERANC and the approximately One Hundred and Ten (110) other employees of ASSOCIATION SPECIALTY GROUP LLC, through wire transfer(s) made directly from REALMANAGE, LLC to ADP TotalSource, Inc. ("ADP"), a professional employer organization, as a result of which bi-weekly payroll payments and Earnings Statements continued to be processed by ADP for Defendants to POMERANC and all other employees of ASSOCIATION SPECIALTY GROUP LLC between approximately November 2019 and December 2019.

14.    At all times material to this Complaint, Defendants, ASSOCIATION SPECIALTY GROUP LLC and REALMANAGE, LLC, were engaged in an industry affecting commerce and had Fifty (50) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year, such that ASSOCIATION SPECIALTY GROUP LLC and REALMANAGE, LLC, individually and/or collectively, constitute an

employer within the meaning of the FMLA, 29 U.S.C. §2611(4), §2612, §2614(a), §2615(a)(1) and §2617(a).

15.    POMERANC worked more than 1,250 hours for Defendants during the twelve (12) month period leading up to December 2019, such that POMERANC was, at all times material to this action, an eligible employee under the FMLA, 29 U.S.C. §2611(2), §2612, §2614(a), §2615(a)(1), and §2617(a).

16.    POMERANC was eligible for and entitled to FMLA leave in 2019 pursuant to 29 U.S.C. §2612(a)(1)(C) in order to care for Plaintiff's elderly father who had one or more serious health conditions including but not necessarily limited to: (i) dementia; and (ii) diabetes.

17.    POMERANC's father's dementia and diabetes constitute one or more "serious health conditions" within the meaning of the FMLA, 29 U.S.C. §2612(a)(1)(D).

18.    Notably, at all times material to this Complaint including but not limited to between approximately October 2019 and December 2019, because Defendants utilized the PEO services of ADP as Defendants' "Leaves Administrator," POMERANC was required by Defendants to submit information regarding Plaintiff's FMLA leave request to ADP.

19.    Between approximately September 2019 and December 2019, POMERANC had numerous conversations with Defendants' management personnel about the health condition of POMERANC's father and Plaintiff's need to go on FMLA leave, including but not necessarily limited to with the following employees: (i) Accounts Receivable Manager, Melissa Tori; (ii) Senior Accounting Manager, Lori Lykins; (iii) Director of Transitions, Yanilka Dipp; and (iv) Vice-President of Business Retention & Development, Tracy Guzman.

20.     In approximately mid-November 2019, POMERANC was required to seek an adjustment to the timing of the beginning of her intermittent FMLA leave as a result of her father's deteriorating health condition.

21.     On November 11, 2019, POMERANC was notified through "ADP Secure Mail" via e-mail that, *inter alia*, Plaintiff met the eligibility requirements for taking FMLA leave from her employment with Defendants beginning January 6, 2020 and Plaintiff had FMLA leave time available in a rolling twelve (12) month period -- but a "Certificate of Health Care Provider Form" was being provided to POMERANC in order for a determination to be made whether Plaintiff's requested intermittent leave qualified as FMLA leave. *See* Exhibit B.

22.     On November 26, 2019, POMERANC was notified through "ADP Secure Mail" via e-mail that, *inter alia*, Plaintiff was eligible for intermittent FMLA leave from her employment with Defendants beginning on December 13, 2019 in order to care for her parent due to a serious health condition of her father and Plaintiff was asked to return a completed "Certificate of Health Care Provider Form" in connection with this leave. *See* Exhibit C.

23.     Notably, on November 26, 2019, Defendants' Director/Chief Operating Officer, Erik Levin, was copied via e-mail at the address "elevin@asgflorida.com" on the November 26, 2019 "ADP Secure Mail," Exhibit C.

24.     On December 13, 2019, POMERANC's father's medical provider, Dr. Leonard J. Pianko, completed a "Certificate of Health Care Provider Form" in connection with Plaintiff's FMLA leave application and Dr. Pianko certified intermittent leave of POMERANC in order for Plaintiff to provide assistance to and help care for her father's activities of daily living (ADLS), supervision of her father's medicines, control of her father's diabetes, and her father's doctors' appointments, all in connection with Plaintiff's father's diabetes and dementia. *See* Exhibit D.

25.     Effective December 15, 2019, ASSOCIATION SPECIALTY GROUP LLC was dissolved by the State of Florida, Division of Corporations as a result of the acquisition by REALMANAGE, LLC and "Articles of Dissolution" filed with the State of Florida on December 15th by ASSOCIATION SPECIALTY GROUP LLC.  *See* Exhibit E.

26.     On or around December 16, 2019, POMERANC returned Dr. Pianko's completed "Certificate of Healthcare Provider Form," Exhibit D, to Defendants in connection with Plaintiff's FMLA leave application to care for her father's serious health conditions.

27.     On the morning of December 17, 2019, Defendants notified POMERANC through "ADP Secure Mail" via e-mail that Plaintiff's request for intermittent FMLA leave had been approved—for a probable duration of six (6) months—for approximately eight (8) hours per day, two (2) days per week.  *See* Exhibit F.

28.     Significantly on December 17, 2019, Defendants' Director/Chief Operating Officer, Erik Levin, was copied via e-mail at the address "elevin@asgflorida.com" on the December 17, 2019 "ADP Secure Mail," Exhibit F.

29.     On December 18, 2019, during an executive/department head meeting on December 18, 2019 at which members of Defendants' management including but not limited to the following individuals were present: (i) Erik Levin, Director/Chief Operating Officer; (ii) Tracy Guzman, Vice-President of Business Retention & Development; (iii) Tracey Ingram, Director of Portfolio Division; (iv) Diana Austin, Payroll Manager; (v) Regional Director, Evan Spivak; and (vi) Damian Ramos, Director of Facilities Maintenance, Diana Austin announced that POMERANC would be an "unexpected termination" but no other management personnel were expected to be terminated.

30.     On the afternoon of December 18, 2019, REALMANAGE, LLC's Payroll Manager, Diana Austin, notified POMERANC that her employment with Defendants was terminated for the purported reason that "with the transition, the company "did not have a spot" for POMERANC.

31.     When Defendants terminated POMERANC's employment on December 18, 2019, REALMANAGE, LLC offered POMERANC a Separation Agreement, Exhibit G, that "outline[d] the details of [her] separation, effective Month, date, year, (the "Termination Date")," affirmatively identified POMERANC in the signature block of the proposed Agreement as "Employee," and under which proposed Agreement REALMANAGE, LLC offered POMERANC a small monetary severance payment conditioned on, *inter alia*, POMERANC:

> (i) "return[ing] all company property that has been issued to you"; and
> (ii) releasing "REALMANAGE, LLC and their predecessors, successors, parent entities, subsidiaries, related or affiliated companies, attorneys, officers, directors, employees, former employees, agents and assigns….from any and all claims, actions, demands, liabilities, and/or causes of action whatever kind or character, joint or several, whether now known or unknown, asserted or unasserted, under any federal or state statute and common law regardless of the forum in which it might be brought.  You are, however, in no way releasing any claims to employee benefits, including pension and/or retirement benefits, which are vested as of the date of your termination."

Exhibit G.

32.     The reason proffered by Defendants' in December 2019 for the termination of POMERANC's employment was false and known to be false by Defendants at the time Defendants terminated Plaintiff's employment.

## COUNT I
## INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

Plaintiff, JENNIFER POMERANC, reasserts and reaffirms the allegations of Paragraphs 1 through 32 and further states that this is an action against ASSOCIATION SPECIALTY

GROUP LLC and REALMANAGE, LLC for Interference in violation of the Family and Medical Leave Act, 29 U.S.C. §2615.

33.     The FMLA, 29 U.S.C. §2615(a)(1), provides that it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under 29 U.S.C. §2611, *et seq*.

34.     Under the FMLA, when the timing of an employee's need for FMLA leave is not foreseeable, an employee is only required provide notice to her employer "as soon as practicable under the facts and circumstances of the particular case." 29 CFR §825.303(a). Similarly, where an emergency condition requires leave because of an FMLA-qualifying reason, written advance notice pursuant to an employer's standard rules and procedures is not required when medical leave is involved. 29 CFR §825.303(c).

35.     POMERANC provided Defendants in October 2019, November 2019, and December 2019 with sufficient facts and notice of her need for intermittent leave to care for her father's serious health conditions.

36.     On multiple occasions during her employment with Defendants in approximately October 2019, November 2019, and December 2019, POMERANC exercised, and/or attempted to exercise, rights guaranteed under and protected by the FMLA, 29 U.S.C. §§2612(a)(1)(D).

37.     POMERANC's father's dementia and diabetes constitute one or more "serious health conditions" within the meaning of the FMLA, 29 U.S.C. §2612(a)(1)(D).

38.     By exercising and/or attempting to exercise her rights under the FMLA on multiple occasions during her employment with Defendants between approximately October 2019 and December 2019, including but not necessarily limited to POMERANC's right to intermittent leave under the FMLA, POMERANC engaged in activity protected by the FMLA,

29 U.S.C. §2611 *et seq*., triggering the protections of the FMLA, specifically including but not limited to POMERANC's rights pursuant to: (a) 29 U.S.C. §2612 to take up to twelve (12) workweeks of leave to care for her father's "serious health condition"; and (b) 29 U.S.C. §2614 to be restored to Plaintiff's position, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment upon her return from leave.

39.     Defendants interfered with POMERANC's right to take intermittent leave under the FMLA to care for her father's serious health condition in December 2019 when Defendants had knowledge of POMERANC's exercise and/or attempted exercise of rights guaranteed under and protected by the FMLA, in violation of 29 U.S.C. §2615(a)(1).

40.     On December 18, 2019, Defendants interfered with POMERANC's rights under the FMLA when Defendants terminated POMERANC's employment in violation of 29 U.S.C. §2612(a)(1)(C) for a reason which was false, pretextual and at a point when POMERANC had not exhausted twelve (12) workweeks of leave which POMERANC was entitled to under the FMLA to care for her father's "serious health condition(s)."

41.     As a result of Defendants' violations of POMERANC's rights protected by the FMLA, Plaintiff has suffered damages including but not necessarily limited to unpaid wages and lost employment benefits.

42.     Defendants' violations of the FMLA were willful, intentional and not done in good faith.

43.     Pursuant to 29 U.S.C. §2617(a)(1)(iii), POMERANC is entitled to an award of liquidated damages from Defendants equal to the sum of the amount of all salary, wages, bonuses, employment benefits, and other compensation denied to or lost by POMERANC by reason of Defendants' violations of 29 U.S.C. §2615(a)(1).

44.     Pursuant to 29 U.S.C. §2617(a)(3), POMERANC is entitled to all reasonable attorneys' fees, reasonable expert witness fees, and other costs of the action to be paid by Defendants.

WHEREFORE, Plaintiff, JENNIFER POMERANC, demands judgment against Defendants, jointly and severally, ASSOCIATION SPECIALTY GROUP LLC and REALMANAGE, LLC, for back pay, employment benefits, other compensation including bonuses, liquidated damages, equitable relief including but not limited to front pay, interest, attorneys' fees, costs and such other and further relief as this Honorable Court deems proper.

## COUNT II
## RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

Plaintiff, JENNIFER POMERANC, reasserts and reaffirms the allegations of Paragraphs 1 through 32 and further states that this is an action against ASSOCIATION SPECIALTY GROUP LLC and REALMANAGE, LLC for Retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. §2615.

45.     The FMLA, 29 U.S.C. §2601 *et seq*., prohibits an employer from retaliating against an eligible employee who has (a) obtained and/or attempted to obtain the benefits and protections of the FMLA; or (b) otherwise triggered the protections of, or engaged in activity protected by, the FMLA.  In addition, 29 U.S.C. §2615 prohibits an employer from discharging or in any other manner discriminating against any individual for opposing any practice made unlawful by the Act.

46.     On multiple occasions during her employment with Defendants between approximately October 2019 and December 2019, POMERANC exercised, and/or attempted to exercise, her rights under the FMLA in accordance with 29 U.S.C. §§2612(a)(1)(C).

47.     By exercising and/or attempting to exercise her rights under the FMLA on multiple occasions during her employment with Defendants between approximately October 2019 and December 2019, including but not necessarily limited to POMERANC's right to intermittent leave under the FMLA to provide care for her father's "serious health condition(s)," POMERANC engaged in activity protected by the FMLA, 29 U.S.C. §2611 *et seq*., triggering the protections of the FMLA, specifically including but not limited to POMERANC's rights pursuant to:  (a) 29 U.S.C. §2612 to take up to twelve (12) workweeks of leave on an intermittent basis to care for her father's "serious health condition(s)"; and (b) 29 U.S.C. §2614 to be restored to Plaintiff's position, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment upon her return from leave.

48.     Not only did members of Defendants' management receive notice about and have knowledge between approximately October 2019 and December 2019 of POMERANC's request(s) for intermittent FMLA leave to care for Plaintiff's father's "serious health condition(s)," but numerous members of Defendants' management team also received notice about and had knowledge between approximately October 2019 and December 2019 of POMERANC's request for intermittent FMLA leave and Defendants' "Leaves Administrator" approving Plaintiff's FMLA leave.  *See, e.g..*, Exhibits C & F.

49.     Defendants were fully aware and/or should have been aware between approximately October 2019 and December 2019 of their legal obligations as an employer covered by the FMLA.

50.     At all times material to this action, POMERANC satisfactorily performed her essential job duties for Defendants.

51.     On December 18, 2019, Defendants retaliated against POMERANC and unlawfully terminated Plaintiff's employment in violation of 29 U.S.C. §2615(a)(1) when Defendants fired POMERANC for a reason which was false and/or pretextual and instead was actually because of Plaintiff's FMLA leave and/or her exercise of her right to leave under the FMLA.

52.     A motivating factor behind Defendants' decision to terminate POMERANC's employment in December 2019 was retaliation against POMERANC because Plaintiff:  (a) requested time off from work on one or more occasions between approximately October 2019 and December 2019 for FMLA-qualifying reasons; and (b) Defendants' knowledge that POMERANC sought and/or triggered the protections of the FMLA, including the benefits and protections associated with intermittent leave and job reinstatement guaranteed by the FMLA, all in violation of 29 U.S.C. §2615(a)(1).

53.     The reason proffered by Defendants to POMERANC for terminating Plaintiff's employment in December 2019 was false, was known to be false by Defendants at the time of POMERANC's termination and instead was a pretext for Defendants' intentional violations of POMERANC's rights under the FMLA.

54.     By subjecting POMERANC to retaliation and terminating POMERANC's employment in December 2019 because Plaintiff exercised and/or attempted to exercise her rights under the FMLA, as guaranteed by, *inter alia*, 29 U.S.C. §2612(a)(1)(C), Defendants intentionally retaliated against POMERANC in violation of the FMLA.

55.     As a result of Defendants' violations of POMERANC's rights protected by the FMLA, Plaintiff has suffered damages including but not necessarily limited to unpaid wages and lost employment benefits.

56.     Defendants' violations of the FMLA were willful, intentional and not done in good faith.

57.     Pursuant to 29 U.S.C. §2617(a)(1)(iii), POMERANC is entitled to an award of liquidated damages from Defendants equal to the sum of the amount of all wages, employment benefits, and other compensation denied to or lost by Plaintiff by reason of Defendants' violations of 29 U.S.C. §2615(a)(1).

58.     Pursuant to 29 U.S.C. §2617(a)(3), POMERANC is entitled to all reasonable attorneys' fees, expert witness fees, and other costs of the action to be paid by Defendants.

WHEREFORE, Plaintiff, JENNIFER POMERANC, demands judgment against Defendants, jointly and severally, ASSOCIATION SPECIALTY GROUP LLC and REALMANAGE, LLC, for back pay, employment benefits, other compensation including bonuses, compensatory damages, liquidated damages, equitable relief including but not limited to reinstatement and/or front pay, interest, attorneys' fees, costs and such other and further relief as this Honorable Court deems proper.

## JURY TRIAL DEMAND

JENNIFER POMERANC demands trial by jury on all issues so triable.


Dated:  April 7, 2020                    Respectfully submitted,


                          By:     **KEITH M. STERN**
                                  Keith M. Stern, Esquire
                                  Florida Bar No. 321000
                                  E-mail:  employlaw@keithstern.com
                                  LAW OFFICE OF KEITH M. STERN, P.A.
                                  80 S.W. 8th Street, Suite 2000
                                  Miami, Florida 33130
                                  Telephone:  (305) 901-1379
                                  Fax:  (561) 288-9031
                                  Attorneys for Plaintiff

# EXHIBIT A

☐ (954) 458-5557    ☐ info@asgflorida.com

**ASG** Association Specialty Group
*A Division of Reefcharge, LLC*

Home    Why Us    What We Do Best    Careers    Vendors    Get Started

# OUR WORLD CLASS ASSOCIATION, FINANCIAL, AND PROJECT MANAGEMENT COMPANY

Association Specialty Group is a full service management company, with experience in every facet of World
Class full-service operations. Serving Homeowner Associations, Condominiums, Condo-Hotels, and
Developers from South Beach Miami to Orlando Florida.

**GET STARTED**

  


## WHAT WE OFFER



### Our Association Management Services Include:

- We offer experienced Community Association Managers to fit your Associations needs
- Our proposals are customized to the needs and direction expressed by the Board of Directors.
- Our Property Management Services include:
  1. Monthly Financials completed on time
  2. Collections division at no cost to the Association
  3. Weekly Board updates and Monthly Managers Reports
  4. Affiliated Consultants at no additional cost to the Association
  5. Requests for Proposal
  6. Cutting Edge Technology to include violations on the fly

### Consultation:

- If you are experiencing challenges in your community today or in your ongoing HOA management, call us so that we can provide assistance.
- Our Executives have the highest credentials, have lectured pro-bono at the top business colleges, and bring decades of resort and association management experience to the table.



### Award Winning Company

- Nominated three years in a row for the award of excellence in Fiscal Innovation and "Come-Back-Kid" award
- #26 in the "Top 100 Gator Company."
- An Accredited Association Management Company (AAMC®)

As the Board of Directors or Developer, you are expected to lead the way through a recovering economy with increased demands. This means that you are not only expected to keep your association at an even keel, but you need to have forward thinking, and evolved association management professionals offering you advice and services from over thirty five years of experience in world class, diverse operations.

## ABOUT US

### Our Vision

Since the founding of our first hotel, resort and association management company in 1990 in Massachusetts, we have been in the forefront in the management, turn-around and operational development of 4 Diamond Hotels, Country Inns, planned communities, condominiums and condo-hotels. Our staff is comprised of seasoned professionals and our services are based upon the needs of our four to five-star clientele within the community association, resort hospitality and commercial property industry. With our team of innovators, Westside Property Management LLC was formed as the Rental Management Division of Association Specialty Group LLC. Since the formation of Association Specialty Group, Consulting Florida Projects and ASG Maintenance, we have developed even more services that allow us to assist with many of the challenges experienced today in Homeowner and Condominium Associations as well as our Resort Managed properties. ASG works with Consulting Florida Project LLC (CFP) for all of its construction management projects to ensure that from the initial Request for Proposal until the completion of the project, all bid specifications and sign-offs are based on the clients needs reflecting our values, consistency and continuity to our operations. ASG Maintenance Group provides roving maintenance services for our communities that have smaller projects – too small to bid.

### Our Mission

Singularity client-focused provision with a full range of professional on-site community association management and property portfolio management services that maximize client boards' and owners' peace of mind.

- Built on a solid foundation of honest and open two-way communication.
- Expert advisory services
- Proactive problem-solving
- Easy-to-use financial planning, management and reporting tools
- ASG productivity and client budget enhancing partnerships with best-in-class third party vendors and suppliers.
- Effective best practices models
- Tech savvy, all anchored in a commitment to a clear sense of urgency, continual learning and improvement, ASG employee advancement, and the conviction that a promise made is a promise kept.



## JOIN OUR TEAM

Looking for the right place to make your passion a thriving career? You've found it.
Check out Association Specialty Group's available positions.

**VIEW OPEN POSITIONS**

### Subscribe

Email

### Contact Us

Association Specialty Group offers only the best quality when managing residential and commercial buildings. We pride ourselves on professional services for our clients, tenants and partners.

Dade: (305) 500-2422

Broward: (954) 458-5557

We are pleased to announce that ASG is now a division of RealManage, LLC.

Privacy Policy

AssetGroup

Interested in removing inefficiencies and benefiting from quality management? Interested in saving on energy, operational and maintenance costs?

Palm Beach: (561) 982-8633

info@asgflorida.com

9050 Pines Boulevard, Suite 480 Pembroke Pines, Florida 33024

902 Clint Moore Road, Suite 110, Boca Raton, Florida 33487

© 2020 Association Specialty Group. All rights reserved.

# EXHIBIT B



Sign Out     Help

rubiemind@aol.com

**From:** totalsource.fmla@adp.com          Print
   Authenticated by adp.com
   Valid Signature (Help)

**To:** hr@asgflorida.com, RUBIEMIND@AOL.COM, HR@ASGFLORIDA.COM

**Sent:** Mon Nov 11, 2019 5:29 PM

**Subject:** Your FMLA Leave Eligibility Notice- FOR YOUR RECORDS - 09192287

**Attached:** 2015 WFN FMLA HealthCare Certification_Family Member Health Condition 2015.pdf
   (190 kb) - View, Download

ADP | IN THE BUSINESS OF YOUR SUCCESS          **DOC:O3TT6B8GD**

November 11, 2019

JENNIFER POMERANC

███████ FL █████

**Re: FMLA Leave Eligibility Notice (Reference Number: 09192287)**

**[Part A – NOTICE OF ELIGIBILITY]**

Dear JENNIFER POMERANC:

On November 05, 2019 we received notification of your need for intermittent leave beginning on January 06, 2020 for:

Because you are needed to care for your parent , due to his/her serious health condition.

This notice is to inform you that you:

Are eligible for FMLA leave. Please refer to **Part B** for your Rights and Responsibilities while you are out on a leave of absence.

You must notify us if your first day of leave changes.

If you have any questions, please contact the ADP TotalSource Leaves Administrator at 844-448-0325.

**[PART B – RIGHTS AND RESPONSIBILITIES FOR TAKING FMLA LEAVE]**

As explained in Part A, you meet the eligibility requirements for taking FMLA leave and still have FMLA leave available in the current rolling 12-month period.However, in order for us to determine whether your absence qualifies as FMLA leave, you must return a completed Certificate of Health Care Provider Form by January 06, 2020.

*If sufficient documentation is not provided in a timely manner, your leave may be denied.*

A copy of the Certificate of Health Care Provider Form is attached.

Please submit the completed forms to the ADP TotalSource Leaves Administrator by fax 866-485-1227 or by regular mail. Paperwork should be sent to the attention of ADP TotalSource Leaves Administration Group 10200 Sunset Drive, Miami, FL 33173.
If you are requesting a leave of absence over 30 days in advance, you will need to contact the Leaves Administration Group at the onset of your leave.

**If your leave does qualify as FMLA leave, you will have the following responsibilities while on FMLA leave:**

- If you have employee benefits, they will be maintained during the first 12 week period of unpaid leave.Please contact your worksite employer if you do not receive group health benefits through ADP TotalSource for information pertaining to your group health benefits and COBRA. **If you normally pay a portion of the premiums for any of your benefits, you must continue these payments during the period of FMLA leave. Arrangements for payment should be made by contacting your worksite employer directly.** You are obligated to make these premium payments to your worksite employer by the first of each month whether or not you plan on returning to work at the end of your leave. You have a minimum 30-day grace period in which to make premium payments. Failure to make timely payments may result in cancellation of your health benefits. Benefits will be terminated if you are unable to return to work at the end of the above-referenced period of FMLA leave. If benefits are terminated, you will have the option to continue your benefit coverage at your own expense through COBRA. If you are covered under a Union agreement, we suggest that you contact your Worksite Employer to determine how your Collective Bargaining Agreement might affect your benefits termination.

- You are required to use your available paid sick, vacation, paid time off or other paid leave

during your FMLA absence unless you are receiving disability income (i.e. workers compensation or short-term disability payments) or if your worksite employer specifically informs you that you are not required to use your available paid sick, vacation, paid time off or other paid leave during your FMLA absence. This means you will receive your paid leave and the leave will also be considered protected FMLA leave and counted against your FMLA leave entitlement. Please contact your worksite employer for additional information.

- While on leave you will be required to furnish us with periodic reports of your status and intent to return to work on the first Tuesday of each month by contacting the ADP TotalSource Leaves Administrator.

- If you are considered a "key employee" as defined in the FMLA, restoration to employment may be denied and health benefits terminated following FMLA leave on the grounds that such restoration will cause substantial and grievous economic injury to your worksite employer.

> [x] We have determined that you are not a key employee as defined in the FMLA.

> [ ] We are unable to determine if you are a key employee at this time. We shall notify you in writing as soon as possible if it is later determined that you are a key employee.

> [ ] We have determined that you are a key employee as defined in the FMLA

> We [ ] Have [ ] Have not determined that as a "key employee" restoring you to employment at the conclusion of FMLA will cause substantial and grievous economic harm to your worksite employer. If we have determined or later determine that as a key employee, restoring you to employment at the conclusion of FMLA will cause substantial and grievous economic harm to your worksite employer, then you will be notified of the basis for this determination in writing by a separate letter.

**If your leave does qualify as FMLA leave you will have the following rights while on FMLA leave:**

- You have a right under the FMLA for up to 12 weeks of unpaid leave in 12-month period calculated as a "rolling" 12-month period measured backward from the date of any FMLA usage.

- You have a right under the FMLA for up to 26 weeks of unpaid leave in a single 12-month period to care for a covered service member with a serious injury or illness. **Only applicable if checked**: [ ]This single 12 month period commenced on (N/A)

- Your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work.

- You must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from FMLA-protected leave. If your leave extends beyond the end of your 12 week FMLA entitlement, you do not have return rights

under FMLA.

- If you do not return to work following FMLA leave for a reason other than: 1) the continuation, reoccurrence, or onset of a serious health condition which would entitle you to FMLA leave; 2) the continuation, reoccurrence, or onset of a covered service member's serious illness or injury which would you entitle you to FMLA leave; or 3) other circumstances beyond your control, you may be required to reimburse your worksite employer for its share of health insurance premiums paid on your behalf during your FMLA leave.

- All employees are generally required to use accrued paid leave while taking unpaid FMLA leave. However, if your worksite employer specifically informs you that it will not require you to use accrued paid leave while taking unpaid FMLA leave Or if you are receiving disability income (i.e. workers compensation Or short-term disability payments) And agree to use accrued paid leave, the following applies:
  - You have the right to have sick, vacation, paid time off or paid leave run concurrently with your unpaid leave entitlement provided you meet any requirements applicable to these policies. For a copy of conditions applicable to these policies, please refer to your worksite employer's handbook. If you have difficulty locating a copy off these policies in your handbook Or need clarification on these policies please contact your manager.
  - If you do not meet the requirements for taking sick, vacation, paid time off or other paid leave, you remain entitled to take unpaid FMLA leave.

### Short Term Disability (STD) Benefits Information

You may be eligible for Short Term Disability (STD) Benefits either through your employer or through a State temporary disability insurance plan. **PLEASE NOTE:** your eligibility to receive short term disability benefits is separate from your eligibility to take leave under the Family and Medical Leave Act.

Employees who have short term disability benefits through MetLife are required to contact them directly at 877-237-8701 to file a disability claim. You may also file your disability claim by utilizing MetLife's employee website, MyBenefits (www.metlife.com/mybenefits), which enables employees to submit claims online in real time.

If you have any questions regarding STD Benefits through your employer or seek assistance with locating state resources to obtain additional information about State temporary disability insurance, please contact the ADP TotalSource My Life Advisor at 844-448-0325.

If you are currently not working due to a work-related injury that may be covered by workers' compensation, please contact the ADP TotalSource Claims Management Unit at 844-448-0325 to coordinate your workers' compensation leave of absence.

### Health Benefits Enrollment for You and/or Your Eligible Dependents

If your leave of absence is due to the birth, adoption or placement for adoption of a child and you are eligible to participate in the ADP TotalSource Health & Welfare plan, you may be able to enroll yourself and/or your eligible dependents in the medical plan based on the occurrence qualified change-in-status enrollment event. Please notify the ADP TotalSource Employee Service Center at 844-448-0325 of your change-in-status as soon as possible so that we may assist you in processing your requested election changes. **You have 60 days from the date of the birth, adoption or placement for adoption to submit your completed "Change in Status/Special Enrollment Request Form" and proof of status change documentation such as a birth certificate.**

**401(K) Information**

If you currently have a payroll deduction set up for a 401(K) loan payment, your loan may go into default status if you do not make alternative arrangements to make such payments outside of payroll deductions. Please contact your plan administrator for payment and /or re-amortization options.

**Flexible Spending Account (FSA) Information**

If you are absent from work due to FMLA or another qualified leave, your participation in the **Health Care Flexible Spending Account (FSA)** will continue, if applicable. If you return to active employment with ADP TotalSource, Inc. during the same plan year, your original Health Care FSA election will be reinstated or you may make a new election for the remainder of the plan year if you experienced a qualified change in status or HIPAA special enrollment event while on leave. You may also continue to submit claims for reimbursement from your Health Care FSA balance during your leave. Once you return to active employment your pre-tax contribution amount will be adjusted to make-up for any missed contributions.

Due to Internal Revenue Code regulations, your participation in the **Dependent Care Flexible Spending Account** will be suspended during your leave of absence. You will not be permitted to continue contributions towards your dependent care reimbursement account during your leave. Additionally, dependent care expenses incurred while you are on leave are not eligible for reimbursement. If you return to active employment with ADP TotalSource, Inc. during the same plan year, your original dependent care reimbursement account election will be reinstated or you may make a new election for the remainder of the plan year if you experience a qualified change in status or HIPAA special enrollment event while on leave.

Once we receive the information from you as specified above, we will inform you whether your leave will be designated as FMLA leave and if it will count towards your FMLA leave entitlement.

**As stated earlier, your deadline to submit the required FMLA paperwork is January 06, 2020.**

Please note that it generally will take 72 hours for any documentation received to be reflected in our leave management system. Therefore, please allow at least 72 hours before confirming receipt of documentation.

Should you have any questions regarding this notice, please do not hesitate to contact the ADP TotalSource Leaves Administrator at 844-448-0325 or by email Leaves@adp.com.
Sincerely,

Fernando Vega
ADP TotalSource Leaves Administration

Reply          Reply to All          Forward

Email Encryption Provided by Voltage SecureMail. Learn More

Email Security Powered by Voltage IBE(tm)
© Copyright 2017 Hewlett Packard Enterprise Development LP

# EXHIBIT C



Sign Out    Help

rubiemind@aol.com

**From:** totalsource.fmla@adp.com                Print
   Authenticated by adp.com
   Valid Signature (Help)

**To:** hr@asgflorida.com, elevin@asgflorida.com, RUBIEMIND@AOL.COM,
HR@ASGFLORIDA.COM

**Sent:** Tue Nov 26, 2019 10:14 AM

**Subject:** Your FMLA Leave Eligibility Notice- FOR YOUR RECORDS **UPDATED**
- 09192287

**Attached:** 2015 WFN FMLA HealthCare Certification_Family Member Health Condition 2015.pdf
            (190 kb) - View, Download

**DOC:O3TT6B8GD**

ADP | IN THE BUSINESS OF YOUR SUCCESS

November 26, 2019

JENNIFER POMERANC

            FL

**Re: FMLA Leave Eligibility Notice (Reference Number: 09192287)**

**[Part A – NOTICE OF ELIGIBILITY]**

Dear JENNIFER POMERANC:

On November 11, 2019 we received notification of your need for intermittent leave beginning on
December 13, 2019 for:

Because you are needed to care for your parent , due to his/her serious health condition.

This notice is to inform you that you:

Are eligible for FMLA leave. Please refer to **Part B** for your Rights and Responsibilities while you are out on a leave of absence.

You must notify us if your first day of leave changes.

If you have any questions, please contact the ADP TotalSource Leaves Administrator at 844-448-0325.

**[PART B – RIGHTS AND RESPONSIBILITIES FOR TAKING FMLA LEAVE]**

As explained in Part A, you meet the eligibility requirements for taking FMLA leave and still have FMLA leave available in the current rolling 12-month period.However, in order for us to determine whether your absence qualifies as FMLA leave, you must return a completed Certificate of Health Care Provider Form by December 13, 2019.

*If sufficient documentation is not provided in a timely manner, your leave may be denied.*

A copy of the Certificate of Health Care Provider Form is attached.

Please submit the completed forms to the ADP TotalSource Leaves Administrator by fax 866-485-1227 or by regular mail. Paperwork should be sent to the attention of ADP TotalSource Leaves Administration Group 10200 Sunset Drive, Miami, FL 33173.
If you are requesting a leave of absence over 30 days in advance, you will need to contact the Leaves Administration Group at the onset of your leave.

**If your leave does qualify as FMLA leave, you will have the following responsibilities while on FMLA leave:**

- If you have employee benefits, they will be maintained during the first 12 week period of unpaid leave.Please contact your worksite employer if you do not receive group health benefits through ADP TotalSource for information pertaining to your group health benefits and COBRA. **If you normally pay a portion of the premiums for any of your benefits, you must continue these payments during the period of FMLA leave. Arrangements for payment should be made by contacting your worksite employer directly.** You are obligated to make these premium payments to your worksite employer by the first of each month whether or not you plan on returning to work at the end of your leave. You have a minimum 30-day grace period in which to make premium payments. Failure to make timely payments may result in cancellation of your health benefits. Benefits will be terminated if you are unable to return to work at the end of the above-referenced period of FMLA leave. If benefits are terminated, you will have the option to continue your benefit coverage at your own expense through COBRA. If you are covered under a Union agreement, we suggest that you contact your Worksite Employer to determine how your Collective Bargaining Agreement might affect your benefits termination.

termination.

- You are required to use your available paid sick, vacation, paid time off or other paid leave during your FMLA absence unless you are receiving disability income (i.e. workers compensation or short-term disability payments) or if your worksite employer specifically informs you that you are not required to use your available paid sick, vacation, paid time off or other paid leave during your FMLA absence. This means you will receive your paid leave and the leave will also be considered protected FMLA leave and counted against your FMLA leave entitlement. Please contact your worksite employer for additional information.

- While on leave you will be required to furnish us with periodic reports of your status and intent to return to work on the first Tuesday of each month by contacting the ADP TotalSource Leaves Administrator.

- If you are considered a "key employee" as defined in the FMLA, restoration to employment may be denied and health benefits terminated following FMLA leave on the grounds that such restoration will cause substantial and grievous economic injury to your worksite employer.

  [x] We have determined that you are not a key employee as defined in the FMLA.

  [ ] We are unable to determine if you are a key employee at this time. We shall notify you in writing as soon as possible if it is later determined that you are a key employee.

  [ ] We have determined that you are a key employee as defined in the FMLA

  We [ ] Have [ ] Have not determined that as a "key employee" restoring you to employment at the conclusion of FMLA will cause substantial and grievous economic harm to your worksite employer. If we have determined or later determine that as a key employee, restoring you to employment at the conclusion of FMLA will cause substantial and grievous economic harm to your worksite employer, then you will be notified of the basis for this determination in writing by a separate letter.

**If your leave does qualify as FMLA leave you will have the following rights while on FMLA leave:**

- You have a right under the FMLA for up to 12 weeks of unpaid leave in 12-month period calculated as a "rolling" 12-month period measured backward from the date of any FMLA usage.

- You have a right under the FMLA for up to 26 weeks of unpaid leave in a single 12-month period to care for a covered service member with a serious injury or illness. **Only applicable if checked**: [ ]This single 12 month period commenced on (N/A)

- Your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work.

- You must be reinstated to the same or an equivalent job with the same pay, benefits, and

terms and conditions of employment on your return from FMLA-protected leave. If your leave extends beyond the end of your 12 week FMLA entitlement, you do not have return rights under FMLA.

- If you do not return to work following FMLA leave for a reason other than: 1) the continuation, reoccurrence, or onset of a serious health condition which would entitle you to FMLA leave; 2) the continuation, reoccurrence, or onset of a covered service member's serious illness or injury which would you entitle you to FMLA leave; or 3) other circumstances beyond your control, you may be required to reimburse your worksite employer for its share of health insurance premiums paid on your behalf during your FMLA leave.

- All employees are generally required to use accrued paid leave while taking unpaid FMLA leave. However, if your worksite employer specifically informs you that it will not require you to use accrued paid leave while taking unpaid FMLA leave Or if you are receiving disability income (i.e. workers compensation Or short-term disability payments) And agree to use accrued paid leave, the following applies:
  - You have the right to have sick, vacation, paid time off or paid leave run concurrently with your unpaid leave entitlement provided you meet any requirements applicable to these policies. For a copy of conditions applicable to these policies, please refer to your worksite employer's handbook. If you have difficulty locating a copy off these policies in your handbook Or need clarification on these policies please contact your manager.
  - If you do not meet the requirements for taking sick, vacation, paid time off or other paid leave, you remain entitled to take unpaid FMLA leave.

### Short Term Disability (STD) Benefits Information

You may be eligible for Short Term Disability (STD) Benefits either through your employer or through a State temporary disability insurance plan. **PLEASE NOTE:** your eligibility to receive short term disability benefits is separate from your eligibility to take leave under the Family and Medical Leave Act.

Employees who have short term disability benefits through MetLife are required to contact them directly at 877-237-8701 to file a disability claim. You may also file your disability claim by utilizing MetLife's employee website, MyBenefits (www.metlife.com/mybenefits), which enables employees to submit claims online in real time.

If you have any questions regarding STD Benefits through your employer or seek assistance with locating state resources to obtain additional information about State temporary disability insurance, please contact the ADP TotalSource My Life Advisor at 844-448-0325.

If you are currently not working due to a work-related injury that may be covered by workers' compensation, please contact the ADP TotalSource Claims Management Unit at 844-448-0325 to coordinate your workers' compensation leave of absence.

**Health Benefits Enrollment for You and/or Your Eligible Dependents**

If your leave of absence is due to the birth, adoption or placement for adoption of a child and you are eligible to participate in the ADP TotalSource Health & Welfare plan, you may be able to enroll yourself and/or your eligible dependents in the medical plan based on the occurrence qualified change-in-status enrollment event. Please notify the ADP TotalSource Employee Service Center at 844-448-0325 of your change-in-status as soon as possible so that we may assist you in processing your requested election changes. **You have 60 days from the date of the birth, adoption or placement for adoption to submit your completed "Change in Status/Special Enrollment Request Form" and proof of status change documentation such as a birth certificate.**

**401(K) Information**

If you currently have a payroll deduction set up for a 401(K) loan payment, your loan may go into default status if you do not make alternative arrangements to make such payments outside of payroll deductions. Please contact your plan administrator for payment and /or re-amortization options.

**Flexible Spending Account (FSA) Information**

If you are absent from work due to FMLA or another qualified leave, your participation in the **Health Care Flexible Spending Account (FSA)** will continue, if applicable. If you return to active employment with ADP TotalSource, Inc. during the same plan year, your original Health Care FSA election will be reinstated or you may make a new election for the remainder of the plan year if you experienced a qualified change in status or HIPAA special enrollment event while on leave. You may also continue to submit claims for reimbursement from your Health Care FSA balance during your leave. Once you return to active employment your pre-tax contribution amount will be adjusted to make-up for any missed contributions.

Due to Internal Revenue Code regulations, your participation in the **Dependent Care Flexible Spending Account** will be suspended during your leave of absence. You will not be permitted to continue contributions towards your dependent care reimbursement account during your leave. Additionally, dependent care expenses incurred while you are on leave are not eligible for reimbursement. If you return to active employment with ADP TotalSource, Inc. during the same plan year, your original dependent care reimbursement account election will be reinstated or you may make a new election for the remainder of the plan year if you experience a qualified change in status or HIPAA special enrollment event while on leave.

Once we receive the information from you as specified above, we will inform you whether your leave will be designated as FMLA leave and if it will count towards your FMLA leave entitlement.

**As stated earlier, your deadline to submit the required FMLA paperwork is December 13, 2019.**

Please note that it generally will take 72 hours for any documentation received to be reflected in our leave management system. Therefore, please allow at least 72 hours before confirming receipt of documentation.

Should you have any questions regarding this notice, please do not hesitate to contact the ADP TotalSource Leaves Administrator at 844-448-0325 or by email Leaves@adp.com.

Sincerely,

Fernando Vega
ADP TotalSource Leaves Administration

Reply          Reply to All          Forward

Email Encryption Provided by Voltage SecureMail. Learn More

Email Security Powered by Voltage IBE(tm)

© Copyright 2017 Hewlett Packard Enterprise Development LP

# EXHIBIT D



# Certification of Health Care Provider for Family Member's Serious Health Condition under the Family Medical Leave Act (FMLA)

This form will need to be completed for your leave of absence. Please fax your completed documentation to the ADP TotalSource Leaves Administration at 866-485-1227. You may also scan and email the documentation to Leaves@adp.com. Any questions regarding this form should be directed to the ADP TotalSource Leaves Administration at 844-448-0325.

## SECTION I: For Completion by the EMPLOYER

**INSTRUCTIONS to the EMPLOYER:** The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need to care for a covered family member with a serious health condition to submit a medical certification issued by the health care provider of the covered family member. Please complete Section I before giving this form to your employee. Your response is voluntary. While you are not required to use this form, you may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308. Employers must generally maintain records and documents relating to medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

Employer name and contact: Association Specialty Group, LLC

Employer email address: ELEVIN @ ASGFLORIDA. COM

Employee's job title: HR | PAYROLL MANAGER - DIRECTOR OF TALENT & RESOURCE MGMT

Regular work schedule: 9 - 5 - M - FRI

Employee essential job functions: HR | PAYROLL | RECRUITING | CORPORATE ACCOUNTING | EMPLOYEE RELATIONS & MGMT

Check if job description is attached: ☑

## SECTION II: For Completion by the EMPLOYEE

**INSTRUCTIONS to the EMPLOYEE:** Please complete Section II before giving this form to your family member or his/her medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave to care for a covered family member with a serious health condition. If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request. 29 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. §825.305(b).

Employee Name: JENNIFER POMERANC                Last 4 Digits of SSN 1233

Reference/Case Number (if known): _____ *(Provided in your Eligibility Notice sent by the ADP Totalsource Leaves Administration Group)* DOC: D3TT6336D

Employee Email Address: RUBIEMIND @ AOL . COM | HR@ASGFLORIDA.COM *Optional. If no email address is provided, ADP TotalSource will send FMLA information by mail to the home address we have on file. Please note: You must have access to this email while on your leave of absence. By providing your email address above, you have agreed to receive your FMLA information electronically, where applicable by law.*

ADP and the ADP logo are registered trademarks of ADP, LLC. Copyright © 2015 ADP, LLC.



Name of family member for whom you will provide care: STUART SOCOL

Relationship of family member to you: DAUGHTER/FATHER

If family member is your son or daughter, date of birth: N/A

Describe care you will provide to your family member and estimate leave needed to provide care:

OVERSITE OF PERSONAL CARE, ADMINISTRATION OF MEDICATION, TRANSPORTATION TO DR.'s APPOINTMENTS DUE TO CHANGE IN HOME HEALTHCARE SCHEDULE

## SECTION III: For Completion by the HEALTH CARE PROVIDER

**INSTRUCTIONS to the HEALTH CARE PROVIDER:** The employee listed above has requested leave under the FMLA to care for your patient. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the patient needs leave. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b). Please be sure to sign the form on the last page.

Provider's name and business address: Leonard J Pianko
21097 NE 27th Ct Suite 110 Aventura Fla

Type of practice / Medical specialty:
Cardiology | Internal Medicine

Telephone: (305) 932 2441    Fax: (305) 933 1749

## PART A: MEDICAL FACTS

1. Approximate date condition commenced: 2018

Probable duration of condition: Indeterminate

**Mark below as applicable:**

Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?
☑ No ☐ Yes. If so, dates of admission:

Date(s) you treated the patient for condition: 1/2018 — thru present

ADP and the ADP logo are registered trademarks of ADP, LLC. Copyright © 2015 ADP, LLC



Was medication, other than over-the-counter medication, prescribed? ☐No ☑Yes.

Will the patient need to have treatment visits at least twice per year due to the condition? ☐No ☑Yes.

Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)? ☑No Yes☐. If so, state the nature of such treatments and expected duration of treatment:

_____

_____

2. Is the medical condition pregnancy? ☑No ☐Yes. If so, expected delivery date: _____

3. Describe other relevant medical facts, if any, related to the condition for which the patient needs care (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

Diabetes

Dementia

Urinary tract infections

_____

PART B: AMOUNT OF CARE NEEDED When answering these questions, keep in mind that your patient's need for care by the employee seeking leave may include assistance with basic medical, hygienic, nutritional, safety or transportation needs, or the provision of physical or psychological care:

4. Will the patient be incapacitated for a single continuous period of time, including any time for treatment and recovery? ☐No ☑Yes

   Estimate the beginning and ending dates for the period of incapacity: indeterminate

   During this time, will the patient need care? ☐ No ☑Yes.

   Explain the care needed by the patient and why such care is medically necessary:

   assistance with ADLs, Supervision of

   medicines, Diabetes control. Doctors

   appointments

_____

5. Will the patient require follow-up treatments, including any time for recovery? ☐No ☑Yes.


Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

undetermined

Explain the care needed by the patient, and why such care is medically necessary:

ADLS                          Dr. appointments

Medication Adherence

6. Will the patient require care on an intermittent or reduced schedule basis, including any time for recovery? ☐No ☑Yes

Estimate the hours the patient needs care on an intermittent basis, if any

8 hour(s) per day; 2 days per week from indeterminate through _____

Explain the care needed by the patient, and why such care is medically necessary:

Please see above

Patient has Dementia & needs total

Supervision.

7. Will the condition cause episodic flare-ups periodically preventing the patient from participating in normal daily activities? ☑No ☐Yes.

Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

Frequency: _____ times per _____ week(s) month(s) _____

Duration: _____ hours or _____ day(s) per episode

Does the patient need care during these flare-ups? ☐No ☐Yes.

Explain the care needed by the patient, and why such care is medically necessary:_____



ADDITIONAL INFORMATION: IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER.

Daughter will ASSIST with father's care 1-2 days a week due to change in home healthcare -

_____
Signature of Health Care Provider

12/13/19
Date

### PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500.Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210.

ADP and the ADP logo are registered trademarks of ADP, LLC. Copyright © 2015 ADP, LLC

# EXHIBIT E

# H15000064580



300338099373

_____
(Requestor's Name)

_____
(Address)

_____
(Address)

_____
(City/State/Zip/Phone #)

☐ PICK-UP      ☐ WAIT      ☐ MAIL

_____
(Business Entity Name)

_____
(Document Number)

Certified Copies _____    Certificates of Status _____

Special Instructions to Filing Officer:

Office Use Only

12/17/19--01014--001    **105.00

2019 DEC 17 AM 10: 54

R. WHITE
DEC 3 0 2019

# COVER LETTER

**TO:**   Registration Section
Division of Corporations

**SUBJECT:** Association Specialty Group LLC
_____
Name of Limited Liability Company

The enclosed Statement of Revocation of Dissolution for Florida Limited Liability Company and fee(s) are submitted for filing.

Please return all correspondence concerning this matter to:

Jonathan Louis
_____
Contact Person

Association Specialty Group LLC
_____
Firm/Company

9050 Pines Boulevard, Suite 480
_____
Address

Pembroke Pines, Florida 33024
_____
City, State and Zip Code

jlouis@asgflorida.com
_____
E-mail address: (to be used for future annual report notification)

For further information concerning this matter, please call:

Jonathan Louis _____ at ( 786 ) 412-2158 _____
Name of Contact Person        Area Code    Daytime Telephone Number


**Mailing Address:**                        **Street Address:**
Registration Section                        Registration Section
Division of Corporations                    Division of Corporations
P.O. Box 6327                               The Centre of Tallahassee
Tallahassee, FL 32314                       2415 N. Monroe Street, Suite 810
                                            Tallahassee, FL 32303

CR2E132 (10/15)

# STATEMENT OF REVOCATION OF DISSOLUTION
## FOR
### FLORIDA LIMITED LIABILITY COMPANY

Pursuant to section 605.0708, Florida Statutes, this Florida limited liability company revokes its articles of dissolution prior to the expiration of 120 days following the effective date (or file date, if no effective date) of the articles of dissolution.

1. The name of the company is: Association Specialty Group LLC

2. The document number of the company is L15000064580

3. The effective date the Dissolution was filed is 12/16/2019

4. The revocation of dissolution was authorized on 12/15/2019

5. A copy of the Articles of Dissolution is attached.

_____
Signature of person authorized to submit the revocation of dissolution

**Filing Fee:** **$100.00**
**Certified Copy:** **$30.00 (optional)**

CR2E132 (10/15)

FILED
Dec 15, 2019
Secretary of State

# ARTICLES OF DISSOLUTION

Pursuant to section 605.0707, Florida Statutes, this Florida limited liability company submits the following Articles of Dissolution:

The name of the limited liability company as currently filed with the Florida Department of State:

ASSOCIATION SPECIALTY GROUP LLC

The document number of the limited liability company: L15000064580

The file date of the articles of organization: April 13, 2015

The effective date of the dissolution if not effective on the date of filing: December 15, 2019

A description of occurance that resulted in the limited liability company's dissolution:

SALE OF COMPANY. NOW OPERATING AS A DBA

The name and address of the person appointed to wind up the company's activities and affairs:

JONATHAN LOUIS
9050 PINES BOULEVARD STE.480
PEMBROKE PINES, FL 33024

I/we submit this document and affirm that the facts stated herein are true. I/we am/are aware that any false information submitted in a document to the Department of State constitutes a third degree felony as provided for in section 817.155, Florida Statutes.

Signature:   JONATHAN LOUIS

Electronic Signature of authorized person

# EXHIBIT F



**rubiemind@aol.com**                    🔒 Authenticated by adp.com ✅ Valid Signature

| | |
|---|---|
| **From:** | totalsource.fmla@adp.com |
| **To:** | hr@asgflorida.com, elevin@asgflorida.com, RUBIEMIND@AOL.COM, HR@ASGFLORIDA.COM |
| **Sent:** | Dec 17, 2019 9:25:34 AM EST |
| **Subject:** | Your Intermittent FMLA Designation Notice-FOR YOUR RECORDS - 09192287 |

**DOC:O3TT6B8GD**

ADP | IN THE BUSINESS OF YOUR SUCCESS

December 17, 2019

JENNIFER POMERANC

███████████ FL ████

**Re: Intermittent FMLA Designation Notice (Reference Number 09192287)**

Dear JENNIFER POMERANC:

We have reviewed your request for leave under the Family and Medical Leave Act (FMLA) and the supporting documentation that you have submitted. Based on recent review of your case and or documentation we received on December 17, 2019 ADP TotalSource has decided that your FMLA leave request has been approved. **All leave taken for this reason will be designated as FMLA.** The FMLA requires that you notify us as soon as possible if dates of scheduled leave change or are extended, or were initially unknown.

## The FMLA Certification of Health Care Provider form supports intermittent usage as follows:

**Probable duration of condition:** 6 months

**Follow up treatments and appointments:** Take Parent to Dr's appointments.

**Reduced schedule:** 8 hours per day; 2 day per week.

Since you are taking leave on an intermittent basis, it is not possible to provide the hours, days or weeks that will be counted against your FMLA entitlement at this time. You have the right to request this information once in a 30 day period (if leave was taken in the 30-day period). Your allotted 12 week FMLA period is equivalent to 480 hours based on a 40 hour workweek. This allotment might be less if you have previously used any time under intermittent or single block periods.

You will be required to present a return to work medical certification to be restored to employment. If such certification is not received in a timely manner, your return to work may be delayed until certification is provided.

You are required to use or substitute your available paid sick, vacation, paid time off or other paid leave during your FMLA absence unless you are receiving disability income (i.e. workers compensation or short-term disability payments) or your worksite employer specifically informs you that it will not require use or substitution of available paid sick, vacation, paid time off or other paid leave. Any paid leave taken for this reason will count against your FMLA leave entitlement.

If you have any questions regarding the enclosures, policy or your eligibility for FMLA, please do not hesitate to contact the ADP TotalSource Leaves Administrator at 844-448-0325.


Sincerely,

Fernando Vega
ADP TotalSource Leaves Administration

---

This message and any attachments are intended only for the use of the addressee and may contain information that is privileged and confidential. If the reader of the message is not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, notify the sender immediately by return email and delete the message and any attachments from your system.

---

🔒 Email Encryption Provided by Voltage SecureMail.

© Copyright 2017 Hewlett Packard Enterprise Development LP

# EXHIBIT G



**To:** Jennifer Pomeranc,

The purpose of this letter is to outline the details of your separation, effective Month, date, year, (the "Termination Date") from **RealManage, LLC** (the "Company").

The Company will pay you a severance amount, (the "Severance Amount") less the appropriate withholding and taxes, that will be made available to you so long as you return all company property that has been issued to you and so long as you agree to the terms of this Agreement set forth below. The Severance Amount shall be equal to $ 2,576.92.

1. In exchange for the consideration set forth above you and your heirs, representatives, and assigns, hereby fully, finally, completely, and forever releases, discharges, acquits, and relinquishes RealManage, LLC and their predecessors, successors, parent entities, subsidiaries, related or affiliated companies, attorneys, officers, directors, employees, former employees, agents and assigns, jointly and/or severally, from any and all claims, actions, demands, liabilities, and/or causes of action of whatever kind or character, joint or several, whether now known or unknown, asserted or unasserted, under any federal or state statute and common law regardless of the forum in which it might be brought. You are, however, in no way releasing any claims to employee benefits, including pension and/or retirement benefits, which were vested as of the date of your termination.

2. You hereby acknowledge that you knowingly and voluntarily enter into this Agreement with the purpose of waiving and releasing any claims, and the rights and claims waived in this Agreement are in exchange for additional consideration over and above anything to which you were already undisputedly entitled; you have been advised in writing to consult with an attorney prior to executing this Agreement, and have had an opportunity to do so; you have been given a period of time, 21 days, if desired, to consider this Agreement, and understand that you may revoke your waiver and release of any claims covered by this Agreement in the seven day period following your execution of this Agreement; provided however, that such a revocation will be deemed to cause a failure of consideration for this Agreement, whereupon RealManage, LLC would be entitled to a return of any monies paid to you. The seventh day after your executing this Agreement is the "Confirmation Date."

3. As consideration for the Severance Amount, you agree that you will not disclose, and have not disclosed (since and including the Termination Date) this Agreement or its terms and conditions to any third person or entity unless you are required to do so by law or legal process, other than to your attorneys and tax advisors. Further, you agree that you will not not (and have not since the Termination Date) do any of the following: (i) make any disparaging remarks about the Company or any related subsidiaries, affiliates, or successors or any of their customers or employees, ever, or (ii) proactively contact any of our existing customers or their existing employees for a period of one hundred eighty (180) days following the Confirmation Date. You further agree that you will cooperate with regard to any matters related to RealManage, LLC where your involvement is required after your termination.

IN WITNESS WHEREOF, the parties have executed this Agreement as follows:

RealManage, LLC                                        Employee

By:_____                   By:_____

Its:_____                    Name:_____

Date:_____                   Date:_____